JAKOB SOCKMAN v. JOHN P. KEIM AND PHILLIP KEIM.

Opinion filed December 10, 1909.

### Sales — Warranty — Fraud and Deceit.

1. Respondent purchased two mares from appellants. The evidence shows that one of them had the glanders at the time of the purchase, and had knots on her head and neck. In response to a question by respondent, as to what caused the knots, appellant Philip Keim said she had a cold, and also said: "For all that I know, she is just as sound as the other." The other mare was sound. *Held,* not a warranty. *Held,* further, that, if respondent is entitled to recover at all under the complaint and evidence in this case, it is for fraud and deceit.

### Sale of Personal Property — Fraud — Concealment of Defects.

2. Fraud or deceit in the sale of personal property may be perpetrated either by false representations, or by concealment of unsoundness in the article sold.

Appeal and Error — Necessity of Showing Error.

> 3. The party alleging error must show it affirmatively on the record.

Appeal from District Court, McLean County; *Winchester,* J.

Action by Jakob Sockman against John P. Keim and Phillip Keim. Judgment for plaintiff, and defendants appeal.

Reversed.

*Hyland & Nuessle,* for appellants.

Where a pleading presents a cause of action, that may be ex contractu or ex delicto, pleader must elect on which he will stand. Connell v. McNett, 67 N. W. 344; Marsh v. Webber, 13 Minn, 101; Reynolds v. LaCrosse Packet Co., 10 Minn. 178; Gailbraith v. Carmode, 86 Pac. 624; Davis v. Tubbs, 64 N. W. 534; Anderson v. Case, 26 Wis., 506; Pierce v. Carey, 37 Wis. 232; Wirth v. Bartell, 54 N. W. 399; Harvey v. Southern Pac. Co., 80 Pac. 1061. Seller's statement of opinion and belief is not warranty. White v. Shelloh, 43 N. W. 99; Tenney v. Cowles, 31 N.. W 221; Austin v. Nickerson, 21 Wis. 549; Lindsey v. Davis, 30 Mo., 406; Erwin v. Maxwell, 7 N. C. 242.

Express warranty excludes all others. Thomas v. Thomas, 41 So. 141; Reynolds v. General Electric Co., 141 Fed. 551; J. I. Case Plow Works v. Niles & Scott Co., 63 N. W. 1013. Inspection excludes implied warranty. Deming v. Foster, 42 N. H. 165;; Becker v. Browner, 18 Ill. App. 39; Rayner v. Ress, 58 Ill. App. 292.

*F. J .Newman* and *Newton & Dullam* for respondent.

Recovery may be had upon false warranty or deceit, where both are involved in the pleading. Cunningham v. Smith, 10 Grat. 255; Frenzel v. Miller, 37 Ind. 1; Stitt v. Little, 63 N. Y. 427; Brown v. Castles, 11 Cush., 348; Stone v. Covell, 29 Mich. 360; Shippen v. Bowen, 122 U. S. 575, 30 L. Ed. 1172; Carter v. Glass, 44 Mich. 154, 6 N. W. 200; Schuchardt v. Allen, 1 Wall, 359; 17 L. Ed. 642; Hudnutt v. Gardner, 59 Mich. 341, 26 N. W. 502; Cowley v. Smyth, 46 N· J. L. 380; Hill v. North, 34 Vt. 604; Pinney v. Andrus 41 Vt. 631; Wheeler v. Wheelock, 33 Vt. 144; Beeman v. Buck, 3 Vt., 53; Vail v. Strong, 10 Vt. 457; Goodenough v. Snow, 27 Vt. 720.

Counts for deceit may be joined and recovery had on false warranty or deceit. Schuchardt v. Allens, supra; Shippen v. Bowen, 30 L. Ed. 1172; Beeman v. Bucky, 3 Vt. 53; Vail v. Strong, supra; Goodenough v. Snow, supra; Pinney v. Adams, 41 Vt. 631.

CARMODY, J. This is an action for damages for breach of warranty of soundness and for fraudlent representations on the sale of a team of mares by the ·defendants to plaintiff. The complaint charges: That the defendants warranted and represented to the plaintiff that said mares and each of them were in all respects sound and well. That plaintiff relied upon said warranty and representations, and purchased said team of mares from the defendants for the sum of $275. That at the time of said warranty, representations, and sale the said mares were not sound and well, but one of them was suffering from a dangerous and equine disease known as "glanders," which fact defendants well knew, or had reason to know, at the time they so sold and warranted said mares, and said warranty and representations were false and were made with the intention of deceiving said plaintiff and to induce him to purchase said mares, and he was deceived and defrauded because of the falsity of said warranty and representations. That said mare infected four other of plaintiff's horses with said disease; said four other horses being of the value of $550. That plaintiff was forced to kill said mare and said four other horses because of said disease. The plaintiff asked judgment for one-half the price paid for said team, $137.50, for $550 the value of the four other horses killed, and for $150 for labor and expense in the care of said horses. The defendants, each by separate answer, denied each and every allegation and each and every portion of said complaint. At the commencement of the trial, defendants objected to the introduction of any evidence for the reason that the complaint did not state facts sufficient to constitute a cause of action, which objection was overruled. Defendants then made a motion that the plaintiff elect which cause of action he would stand on, whether for breach of warranty or false representations; one being ex contractu and the other ex delicto. The motion was denied, and the defendant excepted. On the trial of the case it was shown without evidence to the contrary that respondent purchased the team of mares for $275 on the 12th day of January, 1904.

Respondent testified that on the 11th day of January, 1904, he and one Gottlieb Filler, desiring to buy horses and while driving in company with one Peter Schauer, met defendant Philip Keim, who, in answer to a question by Schauer, said he had horses to sell. They then drove to Philip Keim's place, and reached there about 4 o'clock in the afternoon, and looked at the horses. Respondent found two

that he thought suited him—one gray and one brown. · They came to an understanding as to the price of the two mares, $275. Defendants were to bring the horses to Turtle Lake the next morning, and, if they suited respondent, he would buy them and make the papers. Defendants brought the horses to Turtle Lake the next morning, and said to respondent in the presence of Gottlieb Filler, Andreas Bossert, and his boy: "Here are the horses. If they suit you, you can take them." Plaintiff and the parties with him examined the horses, found that the gray mare had little knots around the head and neck. The knots were a little larger than wheat kernels. Plaintiff asked Keim what was the matter with the gray mare that she had these knots. Keim said that she had a little cold, and then said, "For all that I know, the mare is just as healthy as the others." The other mare that plaintiff was about to buy from Keim was healthy, and has been well and all right ever since. Plaintiff believed what Keim stated to him in regard to the gray mare being, for all Keim knew, as well and healthy as the others; did not know what was the trouble with the gray mare. Plaintiff gave Keim Bros. a note for $275, payable in the fall, secured by a. mortgage. Plaintiff took the team home. The bunches on the mare's head and neck became larger, broke open, and never healed. He thought the mare had a cold; did not know anything of glanders at that time. Later he found that it was glanders. About a week after he purchased the team, he had Schafer, a neighbor, come and look at a lame horse. Plaintiff worked the mare a little in the spring. On May 10th she had a colt, which lived about a week. In the spring on 1904 he saw the defendants Keim in Ram's store in Turtle Lake, and told them that Schaefer said the mare was glandered. Defendant said: "If Schaefer says that, he says that out of envy to us. He is envious of us." Both defendants were there in the store. Plaintiff told them at that time that, if the mare was glandered,·he would bring her back. They said the mare was not glandered; it was only a cold. Then he let the matter rest and went home. On May 15, 1905, he shot her. That, if the mare had been sound and well when he bought her, she would have been worth $150. That the mare communicated the glanders to four other horses of the value of $600, which four horses had to be killed. That the work and expense of taking care of the glandered horses was $300. That Dr. Robinson, a veterinary surgeon, district veterinarian for that district, ordered him to kill three of the horses.

The other two he killed without the doctor's orders. John Keim came to Philip's place on the evening of January 11th and brought the brown mare, knew at the time where John Keim lived. Philip Keim's hired man brought the brown mare. It was dark on the evening of January 11th when they were at Philip Keim's place. Schaefer told plaintiff, when at his place looking at a lame horse, that the gray mare had glanders, but plaintiff did not believe him, because the defendants said it was not glanders. Jacob Bossert testified for plaintiff that he was present in Turtle Lake on January 12, 1904, saw that the gray mare had knots or lumps on the neck and head. Plaintiff asked Keim what she had. Keim said she had taken cold. Plaintiff said he did not know, did not think it was a cold, thought the mare was sick. Keim said: "No, sir; I know the mare is just as sound as the other one." Plaintiff then believed him. Gottlieb Filler testified that he was present at Turtle Lake on January 12, 1904, when plaintiff purchased the team of horses from the defendants. Witness saw the team and looked at them closely. The gray mare had sores and knots on the head. Plaintiff asked what was the matter with the head of the mare. Philip Keim answered that it was a cold. Plaintiff asked whether that would not harm the mare, and Philip Keim said, "I know the mare is just as sound as the other two." Then they made the papers. Emanuel Hoffer, who had considerable experience with horses, testified as to the gray mare and the other horses that were killed, having glanders.

Karl Schaefer testified to the same thing.

Andreas Knobloch testified: That he was working for Philip Keim on January 11, 1904, knew the gray and brown mares in question. That Philip Keim sent the witness into the barn to bring out the gray mare at that time. He loosened her from the manger. Keim then took her away, and said she had knots; that he did not have her very long and she was spoiled already. He said if Sockman saw the knots he would not buy her, and that he did not care if Sockman would not buy her. He could leave her.

John W. Robinson, a veterinary surgeon of Coal Harbor, testified that he was called to respondent's place during the summer of 1905, found glanders there, ordered plaintiff to kill two horses that he found affected with glanders, and afterwards ordered another one killed. He was the district veterinarian for that district.

On the part of the defendants Philip Keim testified that he sold the horses to the plaintiff; that his brother John owned the brown mare; that he went good to John for the price of the mare; and that John had nothing to do with plaintiff. Defendants took the team to Turtle Lake, where they found the plaintiff, who said to make out the papers. Witness told the plaintiff to look at the horses once more. They went into the barn, looked at the horses. Plaintiff was well pleased with the team, was going to pay for them in the fall. Witness said plaintiff could have three or five or maybe ten days to try the team, and, if they did not suit him he could bring them back. Plaintiff said that was satisfactory, and they made the papers. Jacob Keim, defendant's brother, made them out. Witness told plaintiff that he knew nothing wrong with the gray mare, denied that there was any talk of lumps, and denied that the mare showed any; said that he had been trading in horses for about seven years; had never had any experience with glandered horses up to the time that he sold the gray mare; owned her about six days; bought her from his brother Jacob who owned her for nine or ten months, had one mare who was supposed to have glanders, shot in June, 1906; had some conversation with plaintiff during the year 1904; offered him in the fall of 1904 $105 for the gray mare on the credit of the note. He only owned the horse that he had killed in June, 1906, one week. His brother John had some killed at the same time. The note was made payable to Keim Bros. because witness owed defendant John for the brown mare. John Keim testiged practically the same as his brother Philip. Peter Schauer testified that he was at Philip Keim's place on January 11, 1904, heard plaintiff tell Philip that the gray mare suited him, but that he wanted another. Philip told him that his brother John had a brown mare that he thought would satisfy him.

Jacob Keim testified: That he owned the gray mare for nine or ten months. That she had neither glanders nor bunches. That he sold her to his brother Philip six days before the deal with plaintiff. That he heard the conversation between plaintiff and Philip on January 12,. 1904. That nothing was said about the appearance of the gray mare, or that she was sick or had lumps on her head. That John and Philip Keim said to plaintiff: "Here are the horses. If they suit you, take them; and, if they don't suit you, don't take them, rather leave them here as take them." Plaintiff said: "The horses suit me, and I will take them." Philip told

plaintiff he could take the horses home, drive them, and work them three, four, five, or ten days, and if they suited him, all right; if not, he could bring them back. Plaintiff did not say anything after that. He was pleased and signed the papers.

Chas. F. Billows testified that he saw the mare in June, 1904, at Sockman's; that she appeared to be sick, but that nothing was said about glanders.

At the close of plaintiff's case, defendants moved the court to direct a verdict in their favor and in favor of each of them, "for the reason that the plaintiff has failed to make out a prima facie case, and plaintiff has failed to prove any warranty as alleged in this action or otherwise; that he has failed to prove that any representations were made by the defendants or any of them; that he has failed to show that the defendants or either of them knew the horse was diseased at the time of the alleged sale; that plaintiff has failed to show that at the time of the purchase he relied on any of the statements made by the defendants or either of them; that he has failed to show that the defendants or either of them made any representations to induce the plaintiff to make the purchase; that he has failed to show any fraud or deceit; and that it shows from the evidence that the plaintiff himself was negligent, and it shows from the evidence also that the term of caveat emptor applies." Defendant John Keim also moved the court that the case be dismissed as to him, as there was no evidence in the record to show that John Keim at any time owned the horse or had anything to do with the sale of her. Both motions were denied and exceptions taken by the defendants. At the close of all the testimony, defendants renewed both motions, which were denied and exceptions taken. Defendants moved the court to direct the jury to bring in a special verdict and submitted 23 questions to the court to be submitted to the jury. Plaintiff objected on the ground that it was too late. The court sustained the objection, and denied the motion of the defendants, to which they excepted. The jury returned a verdict in favor of plaintiff and against both defendants for the sum of $837.50.

Judgment was entered on the verdict. After the entry of judgment, defendants, on a settled statement of the case, made a motion for judgment notwithstanding the verdict, or for a new trial, which motion was denied. Defendants appealed from the judgment, assigning numerous errors. As most of the errors complained of are

not likely to arise on a new trial, it will be necessary to notice only a few of them. This case was submitted to the jury and a verdict returned upon the theory that the defendants warranted the mare to be perfectly sound and free from any disease. There is abundant evidence to show that she had the glanders at the time of the purchase. In our opinion there is not sufficient evidence of a warranty. The plaintiff testified as follows: "When they brough't the mares there, they said, 'Here are the horses. If they suit you, you can take them.' We examined the horses at that time, and found that the gray mare had little knots around on the head. I didn't know what the knots were. I asked Keim about it. They were on the cheeks and neck. The knots were a little larger than wheat kernels. I asked Keim what is the matter with the gray mare that she had these knots. Keim said that she had a little cold, and then he said: 'For all that I know, the mare is just as healthy as the others.' I saw nothing on the other mare that I was about to buy from him. That one was healthy, and that one I have yet. She has been well and all right all the time since I purchased her." This evidence, it seems to us, is far from establishing a warranty. If plaintiff is entitled to recover at all under the complaint and evidence in this case, it is for fraud and deceit. The complaint contains all the elements of a complaint for a fraud. While it contains all that is necessary to authorize a recovery upon contract, it contains much more. That plaintiff claims there was a warranty as well as false representations, or that both are alleged, does not alter the case. Fraud may be based upon a warranty or upon representations, or upon both together. They may exist severally or together and either or both may be the subject of fraud and of an action for damages for fraud.

Fraud or deceit in the sale of personal property may be perpetrated either by false representations or by a concealment of unsoundness in the article sold. When the action is brought for a deceit by false representations, three circumstances must combine: (1) That the representation was false; (2) the party making it knew it was false; and (3) that it was the false representation which induced the contracting party to purchase. But, when there are no representations made by the vendor, a deceit may equally be practiced by his silence, but in such cases an important distinction must be observed; for whether a cause of action for deceit will arise from mere silence and a knowledge of the defects in the

article sold will depend upon the fact whether the defect is patent or latent. In Brown v. Gray, 51 N. C. 103, 72 Am. Dec. 563, the distinction is thus stated: "When the unsoundness is patent—that is, such as may be discovered by the exercise of ordinary diligence —mere silence on the part of the vendor is not sufficient to establish the deceit, although he knows of the unsoundness, because the thing speaks for itself, and it is the folly of the purchaser not to attend to it." But "when the unsoundness is latent—that is, such as cannot be discovered by the exercise of ordinary diligence—mere silence on the part of the vendor is sufficient to establish the deceit," provided he knows of the unsoundness. If the seller knows of a latent defect in the property that could not be discovered by a man of ordinary observation, he is bound to disclose it. If the defect complained of in the case at bar was unknown to the plaintiff and of such a character that he would not have purchased the mare had he known of it, and was a latent defect such as would have ordinarily escaped the observation of men engaged in buying horses, and the defendants, knowing this, allowed the plaintiff to purchase without communicating the defect, they were guilty of fraudulent concealment, and must answer accordingly. As supporting these views see Grigsby v. Stapleton, 94 Mo. 423, 7 S. W. 421; Lunn v. Shermer, 93 N. C. 164; Ross v. Mather, 51 N. Y. 108, 10 Am. Rep. 562; Beeman v. Buck, 3 Vt. 53, 21 Am. Dec. 571; West v. Emery, 17 Vt. 583, 44 Am. Dec. 356; Darling v. Stuart, 63 Vt. 570, 22 Atl. 634; Stevens v. Bradley, 89 Iowa, 174, 56 N. W. 429.

There is some evidence in this case to show that the defendants, or at least the defendant Philip Keim, knew that the mare was suffering from some disease; that she was spoiled; that, if plaintiff knew of the disease, he would not buy her. Defendants made no disclosure of the fact that the mare was sick except that she had a cold. There is no claim that the plaintiff knew the mare was diseased. He did know that she had knots on the head and neck, but was informed by the defendants, or one of them, that she was suffering with a cold. Glanders is a disease not easily detected except by those having had experience with it. It may be true, as contended by respondent, that the rule of damages is the same in actions arising upon contract and actions not arising upon contract; still litigants are entitled to have their causes submitted to the jury on the issues made by the pleadings and on the evidence introduced. If the evidence in the case at bar shows

any facts entitling the plaintiff to recover in this action against the defendants, or either of them, it is for fraud and deceit. The court did not err in refusing to direct the jury to find a special verdict as requested by appellants. The request to direct the jury to find a special verdict must be made at or before the close of the testimony, and before any argument to the jury is made. Section 7034, Rev. Codes 1905. The record does not show whether the request was made before or after the arguments to the jury. The party alleging error must show it affirmatively on the record. The question whether the defendants or either of them were liable for fraud and deceit should have been submitted to the jury under proper instructions. Neither the evidence nor the pleadings bring the plaintiff within the provisions of section 5421 of the Revised Codes of 1905, relating to an implied warranty.

For the reason stated, the judgment is reversed and a new trial ordered. All concur except MORGAN, C. J., not participating.